UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Panama City Division

MUSTAFA A. HAMMAD, M.D.,

    Plaintiff,

vs.                                                CASE NO. 17-cv-00288-RH-GRJ

ALEX M. AZAR II, in his capacity
as Acting Secretary of the United States
Department of Health and Human
Services,

    Defendant.
_____/

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S**
**REPORT AND RECOMMENDATION**

COMES NOW Plaintiff, Mustafa A. Hammad, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and objects to the Magistrate Judge's January 15, 2021 Report and Recommendation [D.E. #32], and as grounds states:

On January 15, 2021, United States Magistrate Gary R. Jones entered his Report and Recommendation ("R & R") affirming the decision of the Medicare Appeals Council ("MAC" or "Council") that reversed the Administrative Law Judge's decision finding the Medicare Zone Program Integrity Contractor's employed invalid statistical sampling methodology.

**I.     BACKGROUND**

In June 2009, SafeGuard, a Medicare Zone Program Integrity Contractor, conducted an announced audit of Dr. Hammad's offices. R. 01369. Three years later, on

1

June 29, 2012, Dr. Hammad was informed by letter that SafeGuard had concluded that 100 percent of the 811 claims for all 1,215 services for the 50 selected beneficiaries were paid in error (resulting in $122,869.89 in claimed overpayments for the 50 selected beneficiaries), and that it had extrapolated its results to the entire universe of claims for the three year period running from January 1, 2006 through December 31, 2008 (comprising 1,316 beneficiaries), resulting in an asserted overpayment of $1,203,244.00. R. 01369-70, 00552-53. On July 25, 2012, the Medicare Administrative Contractor, First Coast Service Options, Inc. ("FCSO"), demanded repayment of $1,203,244.00. R. 00560.

Dr. Hammad disagreed with SafeGuard's determinations, asserted each of the services provided to the 50 beneficiaries was medically necessary and properly reimbursed, and requested reconsideration of SafeGuard's determinations. R. 00556. On redetermination, FCSO issued a partially favorable ruling, allowing coverage on many claims previously rejected by SafeGuard. R. 00542-45, 00441-536.

In December 2012, Dr. Hammad, continuing to maintain the propriety of the services he provided and the Medicare reimbursements, requested reconsideration by the Qualified Independent Contractor ("QIC") of the unfavorable portions of the redetermination decision, and provided additional records for support. *See* R. 00700. Dr. Hammad also challenged the extrapolation based on FCSO's failure to provide requisite documentation to support the sampling and extrapolation methodology. R. 01350-72.

On February 15, 2013, the QIC, Q2 Administrators, LLC, ("Q2A") issued a partially favorable determination, allowing coverage for many additional claims. R. 01268-1348.  At this point, almost half of the claims initially deemed improper by

2

SafeGuard had been found to be proper and compensable by Medicare. R. 01130-78. The QIC, without affording Dr. Hammad an opportunity to analyze or challenge the methodology, concluded the statistical sampling and extrapolation was permissible. R. 01166-71.

On April 10, 2013, Dr. Hammad requested review before an Administrative Law Judge ("ALJ"), (1) challenging all the unfavorable claims determinations, and (2) asserting "that the statistical sampling and extrapolation performed by the Medicare Administrative Contractor was flawed and does not correctly reflect the amount of overpayment, if any." R. 01123.

On April 27, 2017, ALJ Richard S. Bush issued a partially favorable decision. The ALJ overruled the vast majority of the Medicare contractors' unfavorable coverage decisions, R. 00250-418, and rejected the extrapolated demand for overpayment finding the statistical sampling and extrapolation calculations were invalid, R. 00249-50. While the exact reimbursement of some (13) of the claims could not be determined at the time of the 2016 hearing, the ALJ, based on expert testimony, estimated Dr. Hammad's total liability for individually adjudicated claims was approximately $15,500.00. R. 00418.

On June 23, 2017, CMS submitted a referral memorandum requesting the Medicare Appeals Council review the ALJ's decision. R. 00049-76.

On September 20, 2017, the MAC issued its decision on "own-motion" review. Most basically, the Council concluded "that the statistical sampling and overpayment extrapolation are consistent with the applicable manual guidelines, and that [Dr. Hammad] has not established that the statistical sampling is invalid." R. 00005.

3

On November 20, 2017, pursuant to 42 U.S.C. § 1395ff(b) and 42 C.F.R. § 405.1136, Dr. Hammad sought review of the MAC decision in this Court by way of a Complaint Seeking Judicial Review of Decision of the Medicare Appeals Council [D.E. #1]. Cross-motions for judgment on the pleadings and related briefs were submitted by the parties between August and November 2018 [D.E. # 16, # 19 (renumbered as D.E. # 23, # 24, respectively), and # 20].

On January 15, 2021, Magistrate Jones issued his R & R and recommended the MAC's decision be affirmed. R & R. at 2. Most basically, the Magistrate concluded there was no showing "that the Council erred as a matter of law in concluding that Safeguard was not bound by the statistical resources identified in the MPIM [Medicare Program Integrity Manual] in performing its overpayment extrapolation." R & R at 21. More specifically, the Magistrate concluded that "[w]hile other sampling units are contemplated in the guidelines and may be preferred [by Plaintiff's statistical expert], on this record the Court cannot conclude that the Council erred as a matter of law in accepting SafeGuard's approach as reasonable, in view of its assessment that the large number of procedure codes made a different approach impractical. Safeguard's approach is plainly authorized under the MPIM." R & R at 24. Finally, the Magistrate found that the MAC reasonably concluded that Plaintiff did not establish that the extrapolation was invalid because the distribution of average overpayments was not normally distributed. R & R at 25-26. Plaintiff objects to each of these findings by the Magistrate.

## II.  STANDARD OF REVIEW

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, "The district judge ... shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule."  The district judge may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id*. Portions of the report and recommendation that are not specifically objected to are subject to the clear error standard. The identical requirements are set forth in 28 U.S.C. § 636(b)(1).

## III.  DISCUSSION

### A.  The Magistrate erred in finding that there was no showing the MAC erred as a matter of law when the MAC concluded SafeGuard was not bound by the statistical resources identified in the MPIM in performing its overpayment extrapolation.

The Magistrate erred as a matter of law by concluding that Medicare contractors need not follow the prevailing laws and assumptions of probability and statistics when imposing extrapolated overpayment assessments based on a review of a sample of claims.

While statistical experts might disagree as to applicable law and assumptions of probability and statistical theory, there can be no serious argument that due process and relevant laws and regulations require that "sample adjudication" for overpayment demands must be conducted in accord with the assumptions of probability and statistical theory – whatever they are determined to be through statistical evidence.

As discussed in the briefing below, CMS's own position, inherited from its predecessor agency, the Health Care Finance Administration ("HCFA"), is that statistical sampling and projection is only permissible, and only comports with due process, when it involves "a statistically valid sample," employs "statistically valid methods," and results "in a statistically accurate estimate of the total amount the provider had been overpaid." HCFA Ruling 86-1, at 2.

The Medicare Program Integrity Manual, upon which CMS relies, itself seeks to "ensure that a statistically valid sample is drawn and that statistically valid methods are used to project an overpayment," MPIM § 3.10.1.1, thus it requires CMS contractors to employ the services of a professional statistician, who, at a minimum, has an understanding of the ten texts set out in section 3.10.10, in order "to ensure that a statistically valid sample is drawn and that statistically valid methods for projecting overpayments are followed," MPIM § 3.10.1.5, and requires them to use "the correct formulas for estimation," MPIM § 3.10.2.

These agency directives themselves make clear that "sample adjudication" must follow the laws and assumptions of probability and statistical theory.  Otherwise, the requirements to use a statistically valid sample and statistically valid methods become meaningless.

To the extent these agency directives can be read any other way, constitutional due process provides an independent requirement that "sample adjudication" must follow the laws and assumptions of probability and statistical theory. In the seminal case addressing the issue, the D.C. Circuit recognized that "sample adjudication" must involve "a

randomly selected and statistically significant number of sample claims," that extrapolation can only be made from "a representative sample" that "is statistically significant," and that a provider must be allowed to "challenge the statistical validity of both the sample and the extrapolation." *County Home Health Service,* 931 F.2d at 916, 921-22. The D.C. Circuit's recognition that both the sample and the extrapolation must be statistically valid is nothing short of a statement that sampling and extrapolation must follow the laws and assumptions of probability and statistical theory.

Finally, Congress, through the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, P.L. 108-173, 117 Stat. 2066, § 935 (Dec. 8, 2003) (codified at 42 U.S.C. § 1395ddd), has imposed a statutory requirement that any extrapolated overpayment demand be premised on a statistically valid random sample and employ statistically valid methodology.  Section 1395ddd prohibits use of extrapolation to calculate overpayments unless the "Secretary determines—(A) there is a sustained or high level of payment error; or (B) documented educational intervention has failed to correct the payment error." 42 U.S.C. §1395ddd(f)(3).  Congress further amended the Notes to section 1395ddd, directing that section 1395ddd(f)(3) "*shall apply to statistically valid random samples* initiated after the date that is 1 year after the date of the enactment of this Act." P.L. 108-173, 117 Stat. 2066, § 935 (emphasis added).  As such, in 2003, Congress limited the circumstances in which "extrapolation" could be used to project overpayments, and Congress imposed a requirement that "extrapolation" could only be used with statistically valid random samples.  Congress's use of the term "extrapolation" and its limitation on its use to "statistically valid random samples" represent Congress's

7

clear dictate that CMS follow the laws and assumptions of probability and statistical theory.  Otherwise, Congress's limitations would be meaningless.  To the extent CMS regulations and guidelines do not requiring sample adjudication to follow the laws and assumptions of probability and statistical theory, such agency regulations and guidelines are invalid, outside the range of permissible interpretations, and subject to no deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

In sum, the weight of legal authority, presented to the Magistrate, demonstrates that statistical texts demonstrating acceptable sampling and extrapolation methodology, especially those identified in the MPIM itself, must be followed, and the Magistrate erred in stating, "Plaintiff points to no authority holding that sampling methodology must conform to the texts identified in the MPIM resources section," R & R at 20.  Contrary to the Magistrate's conclusion, "the Council erred as a matter of law in concluding that SafeGuard was not bound by the statistical resources identified in the MPIM in performing its overpayment extrapolation."  *Id.* at 21.

**B.  The Magistrate erred in upholding the Council's determination that SafeGuard's statistical approach was lawful, reasonable, or authorized.**

Dr. Hammad presented the uncontroverted testimony and evidence from his expert to establish SafeGuard used an incorrect formula for extrapolation.  Specifically, Plaintiff's expert established by record evidence that (1) a prerequisite for application of the estimation formula SafeGuard used in this case – namely, $1,316\{\text{Stra.Avg.OP} - t_{.2,df}\text{Std. Error of Strat.Avg. OP}\}$ – is that the stratified average overpayments be normally

8

distributed, and (2) unrefuted statistical testing performed by Plaintiff's expert established the stratified average overpayments were not normally distributed in SafeGuard's sample. *See* R. 00084, 00087. In short, Plaintiff's expert explained in unrefuted evidence that, in the absence of a "normal distribution" of the stratified average overpayments, the lower confidence limit does not provide an overpayment estimate with a ninety percent (90%) probability of being less than the total overpayment from the frame. *See* R. 00087.

As such, Dr. Hammad presented uncontroverted expert statistical evidence that SafeGuard used the incorrect confidence interval formula for the non-normally distributed sample it selected, and as such there was no proper basis on which to conclude or assert that the extrapolated overpayment demand had a 90% chance of being smaller than the actual overpayment, as required by applicable rules and regulations. The Magistrate erred in concluding that use of the wrong formula did not require reversal here.

> **C.    The Magistrate erred in finding that the MAC reasonably concluded Dr. Hammad did not establish that the extrapolation was invalid because the distribution of average overpayments was not normally distributed.**

Relatedly, Dr. Hammad presented unrefuted evidence detailing that SafeGuard's estimated overpayment extrapolated from a sample with a non-normal distribution of stratified average overpayments violated the governing laws and principles of statistics, principally because normal distribution is a "necessary condition" for application of the confidence interval calculation for extrapolation used by SafeGuard. Accordingly, the

9

statistical process described by the statutory term "extrapolate" cannot reasonably be interpreted, as the Council did here, to allow for estimating overpayments to the entire larger frame, because uncontroverted evidence established that the sample as draw and conducted – in which stratified average overpayments were not normally distributed – did not meet the prerequisites for application of SafeGuard's so-called extrapolation calculation.

In sum, beyond violating applicable rules and regulations, SafeGuard's purported calculations violate the statutory command to "extrapolate," because whatever SafeGuard was doing based on its use of the wrong formula for the non-normally distributed sample it selected, was not "extrapolation" as that term is used in 42 U.S.C. § 1395ddd(f)(3). Consequently, extrapolation was not permitted by law under the circumstances of this case, and the MAC erred in concluding extrapolation was permissible, and the Magistrate erred in affirming that conclusion.

## IV.   CONCLUSION

For the stated reasons, the Magistrate's decision affirming the MAC decision approving SafeGuard's use of extrapolation in calculating its overpayment assessment against Dr. Hammad must be reversed.

Dated: March 26, 2021                    Respectfully submitted,

/s/
Sean M. Ellsworth, Esq.
Florida Bar No. 39845
Ellsworth Law Firm, P.A.
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 (phone)
(305) 535-2881 (fax)
sean@ellslaw.com

Christopher A. Parrella, J.D., CHC, CPC
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
(admitted *pro hac vice*)

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify this document complies with the length limitation set forth in Northern District of Florida Local Rule 7.1(F).

/s/
Sean M. Ellsworth

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, a true and correct copy of the foregoing has been filed with the Court's CM/ECF filing system which will send notification of such filing to all counsel of record.

/s/
Sean M. Ellsworth